This case is also Veterans Contracting Group v. United States, 2018-14-10. I'm sure we'll hear from you again, Mr. Lifton. Thank you, Your Honor. If it pleases the court, my name is Joseph Whitcomb and I represent Veterans Contracting Group on case number 14-10 before this court. In this issue, this case turns around the SBA's, in our view, the world's recalcitrant allegiance to a definition of a word. In this case, the word is unconditional. The mootness question, because the government has terminated the contract for convenience. And so, why doesn't that render this moot? For the reasons that we briefed before, there is a collateral damage question, which is still before this court, which is the SBA's actions in this instance resulted in the removal of Veterans Contract BCG from the VIP database. That's why we're here in the first place. That's why it's not moot. The second reason is there was, in our view of the world, a constitutional violation as it applies to Veterans Contracting Group and other veterans in this application of the Wexford Standard for the history that it was applied from 2006 forward. What relief are you seeking for that? One is a declaratory relief, Your Honor. We're in the Court of Federal Claims. The Court of Federal Claims is largely, I mean, on review from the Court of Federal Claims, largely does not issue declaratory judgments. It issues money judgments. It can issue equitable relief in order to carry out those money judgments, but it doesn't have declaratory judgment authority. It does have authority to rule on constitutionality of provisions, and it does have the authority to carry it to – and the – to answer your Honor's first question. Well, let's move past that. I don't want to get a debate on that. But what relief besides a declaratory judgment do you think we could have the Court of Federal Claims provide in this case? In this case, it would be a – what we're seeking is a reversal of the lower court's decision, which was that the SBA's determination – I understand what you think the error is and what the court did, but what relief would that lead to? One – for one thing, the SBA's determination back in January – or, sorry, April of 2017 rendered, as it stands today, as we sit here before you, the SBA's determination is that – that a VCG is ineligible to compete for non-VA SDVOSB procurements until it fixes its operating agreement. That's – that was the ruling from the area office that was upheld by the Office of Hearings and Appeals and that Judge Leto found was not arbitrary and capricious. But there's a new standard. There is a new standard, but there – that new standard has not been applied directly to Veterans Contracting Group as it relates to their operating agreement. Well, isn't it premature to determine what that new standard is going to be until it's actually applied in the context of a new qualification and a new procurement? How are we to know what SBA is going to do with the new standard as applied to VCG? Well, VCG also was ineligible to compete for contracts from – that were non-VA SDVOSB. Those contracts aren't part of this case, though. But its eligibility is before this case. Its eligibility to compete for those contracts historically is still before this case. This new – the new regulation gives you everything you want for the future, right? We are – we are of the mind that the answer to that is yes. The October 1, 2018 regulation grants – puts a definition in place from 8A and WOSBs and applies it to SDVOSBs. So – And with regard to these – this universe of contracts you supposedly weren't eligible to compete for, what kind of relief do you think we could give to that? I mean, these contracts have either been awarded or canceled or performed or the like. And they're not even part of this case. But the – if the – if 1410 is moved, then 1409 – I may be saying that backwards. If basically the SBA's actions – if we don't get a ruling that SBA's actions were arbitrary and capricious, then there's no basis for challenging the VA's actions for the arbitrary removal. Because the VA's entire – Wait a moment. I don't understand. Judge Leto has said it was arbitrary and capricious. The government didn't appeal. Over. Done with. That's the assumption in the 09 case. I – yes. Your Honor, I agree. The – I'm one – I mean, I don't think this case affects the 09 case at all. I mean, I may differ with you on the views of the effect on the – you know, what the 09 case is. But what relief would the Court of Federal Claims order in this case given that the standard has changed and the contract at issue in this case has been canceled? The cancellation of that contract only happened days ago. It's still canceled. But I'm saying, Your Honor, we haven't had a – nothing has told us as it relates to the cancellation of that procurement. We wouldn't have standing to cancel it. The – well, that's the problem with – I don't understand what your argument is to why this case isn't moot. The contract that you were challenging the award of is gone. There's nothing – we can't reinstate the contract. I mean, if we reinstated the contract, it would be to your adversary. We can't, you know, kick them out and reopen solicitation. We can't do any of that kind of relief. The standard has changed. So even if we could order a declaratory judgment that the previous standard was wrong, what effect would it have since that standard is no longer in place? Well, the effect it would have is that we suspect that Veterans Contracting Group was not the only party harmed by the application of the Wexford Standard. And if those parties have complaints about that, they can bring it in an appropriate case where there's an appropriate entry to them. Our only argument here before this court is that VCG was harmed by the application of the Wexford Standard. It has attorney's fees that it has fought for the last year and a half as it relates to this misapplication of the Wexford case. It has the preparation cost, obviously, as it related to the demolition case. It has other damages that are still associated with this misapplication of the Wexford Standard. In this case? In this case. Where did you preserve any of this or where did you make any of these arguments in your response to the government's motion to dismiss as moot? This is the first time I'm hearing that you're damaged because you had attorney's fees. Did you make a request for attorney's fees? Honestly, Your Honor, I came in here assuming that the mootness issue had been decided because the government's motion for mootness was denied yesterday. So, I didn't come prepared to argue on the issue of mootness. So, it was denied pending this argument. We were giving you an argument. Yes. Okay, so for the issues that we, for the reasons we argued in that brief, we don't believe that this case is moot. We don't believe that the collateral damage that that case caused has gone away. But you didn't argue anything about attorney's fees in that brief, right? We did not argue in that case about attorney's fees. In that brief, we didn't argue about attorney's fees. We argued about the collateral damage. We argued about the fact that in this instance, what I think is ultimately at stake here is that veterans have been treated historically differently in our view of the world disparately based on this Wexford standard. And that that issue has not been, that issue has not been in our view of the world. We can agree with you on that. It seems like the government agrees because they've changed the standard. What's the actual relief that results from that conclusion? Well, I don't know if it would, I don't believe that it would fall within the purview of this court. But if our arguments are correct and that the reason for the Wexford standard being wrong was constitutional, then I think that opens the doors to lots of other types of relief, including 1983 actions and the like. Well, you need to go file those in the appropriate court. Are you asking us to issue a not, you know, a declaratory judgment that the government acted unconstitutionally so that you can go force it elsewhere? I don't see how the Court of Federal Claims has any jurisdiction over that kind of claim. I think the Court of Federal Claims has jurisdiction over whether or not BCG's procedural due process rights were violated, which we argued in the lower court. In connection with the procurement. In connection with the procurement and in connection with its overall entitlement, which this, which we are here, which we learned- But once the procurement goes away, the Court of Federal Claims doesn't have freestanding jurisdiction over constitutional due process claims. But I think that ignores the fact that the eligibility to compete for STD OSB contracts is a property right established by statute. Are you pivoting to a taking claim now? Because I don't see that anywhere in your response to us in opposition to the motion to dismiss or certainly not in the proceedings below. Our arguments in the proceedings below were that the SBA misapplied, adhered to a Wexford standard simply because it could. Right. And you've gotten the relief, at least tentatively, that you want, which is that they've changed the standard. So you want a declaration that in retrospect they shouldn't have done that? I'm saying that it was still damaged by the award of this contract earlier. It may have been, but the contract's been canceled and you have not stated in any clear way what kind of monetary relief or otherwise injunctive relief in the typical bid protest manner that we could order or have the Court of Federal Claims order. Well, it's there. They are small and they are included in our brief, which is what this court has ruled over and over again, which is simply its preparation cost and its proposal cost. Did you say that in response to the opposition in your office? Yes. Can you point it to me? Because I'd look for bid prep costs and I didn't see it. I don't know if we argued in the in that motion or in our in our earlier motions. Well, this is a mootness in response to the cancellation of the contract. Right. Your Honor, if I could reserve that time for rebuttal. You have plenty of rebuttal time. Why don't you look for that, for the answer and you can provide it in rebuttal. Thank you. Ms. Speck. Good morning, Your Honor. Elizabeth Speck for the United States. We would again renew our request that the court dismiss. Why was this contract terminated for convenience? Certainly, Your Honor. The main reason for the termination for convenience was this was a demolition contract for VA buildings. There was a large increase in asbestos found in the buildings and the change was large enough to make a modification out of scope of the original contract. At the time the termination for convenience contract was issued, approximately 16 percent of the contract had been completed. That was primarily site work. And the agency's plan going forward is to re-solicit this as part of a combined project with a site build out in March of 2019, approximately. And will that be bid? Will the solicitation be for veteran-owned businesses? I don't know at this time, Your Honor. I think they're still evaluating the requirements and whether they would have a sufficient number of veteran-owned small businesses. At the time, and again, if the VA, pardon me, the SBA's regulations at 13 CFR 125.30 would permit veterans contracting group to go back before the SBA and explain why it should be eligible to be a service-disabled veteran. And that would be decided under the new standard based on the regulations that were effective as of October 1st. Your Honor, in terms of, I don't know if the court has any other questions. In terms of the bid prep and proposal costs, the complaint, which is unfortunately not part of the appendix, never asked for bid prep and proposal costs. It said award VCG attorney fees and expenses. So bid prep and proposal costs have never been a part of this. Again, to the extent attorney's fees would ever be at issue, the government's position would still be substantially justified. The Small Business Administration was acting in accordance, OHA was acting in accordance with its precedent at the time. But would a claim for EGF fees, EGF would apply here, right? I believe so. Yeah, so would a claim for EGF fees prevent mootness? I don't believe so, Your Honor. I think, again, the government, the step for jurisdiction is whether it's an injury in connection with a procurement or a proposed procurement. And here there simply is no procurement injury to be remedied, which is the jurisdictional hook. There are no cases that address the question about attorney's fees and mootness? Not that I have off the top of my head, Your Honor. Again, we would submit that if there's no jurisdiction, then the court cannot address that question. Again, there's just simply no competitive injury to be remedied by the court here. If the court has no further questions, we respectfully request that the court either dismiss this as moot or affirm the judgment of the lower court. Thank you. Thank you, Counsel. Mr. Wickham, you have three minutes plus for rebuttal if you need it. Okay, so the court has raised the issue of fine when that the new regulations on October 1, 2018 give... You didn't request a bid preparation cost on the complaint, is that right? I think that that's correct. When we were done with judgment... The authority that says that a request for EGF fees prevents the underlying case from becoming moot? I do agree with that, Your Honor. I believe that that point avoids it from becoming moot, but also the second issue... I don't know about our cases. Cases. Are there any cases? The case law that I understand, and we argue for EGF fees in another context on a regular basis, is that if the government has acted in a way that is unreasonable, that is the standard by which EGF fees... Well, sure, that's the standard, but are there any cases that say a request for EGF fees prevents mootness? I would be happy to brief that issue after the fact, Your Honor. I don't have any offhand that would discuss the issue of mootness. As it relates to this case, however, I think the one thing that keeps us from being moot goes back to the area office's determination, which was ultimately upheld. It states that in its order that Veterans Contracting Group, part of its ineligibility is it is then required to go into SAM.gov and remove its status of eligibility from SAM.gov until it gets leave from the SBA. It shouldn't be in a position of having to assume that the SBA will now grant its authority or its eligibility just because there's been a rule change. In other words, the SBA Veterans Contracting Group would then still be charged with going back to the SBA. I'm going to say this more clearly. The area office's charge was that the SBA, or the BCG rather, could not hold itself out as a service-disabled veteran in a small business until it had sought leave from the SBA to do so. It has not because of the pendants of this case. Therefore, that keeps us from being moot. It can't, in our view of the world, simply go back and say, well, there's been a rule change. We can go back into SAM and certify ourselves as an SDVOSB anymore. And if it's not able to do that, it's not able to compete for SDVOSB. I don't understand what you're saying. Part of the eligibility in any procurement is part of the certs and reps that are either contained in the procurement itself or in the solicitation itself where the veteran-owned business checks a box on that procurement sheet or, secondarily, goes out or, alternatively, goes out to SAM.gov and certifies that it is an SDVOSB. The area office's determination on eligibility precluded Veterans Contracting Group. But the trial court already decided that that wasn't correct. Only as it related to the VET-Biz database. It did not. That's the only part of this case that was before the trial court. No. No, Your Honor. I'm sorry. For veterans- So you're asking us to issue a declaratory judgment to the SBA to correct its database. No. It's not. The area office's determination was that not just- I frankly have no idea what you're talking about. Are you saying that you are prevented from going back to SBA and saying our status needs to be corrected? No. I'm saying that that's what it has to do. It has to go. The court's ruling, the court question was- And what would we do? Are you saying we can tell the SBA that you don't have to do that? That you should just be reinstated automatically even though there's now different regulations to apply? I'm saying, yes. I'm saying that if this court rules that the SBA's determination was erroneous in the first place because of the arguments that we've made, then that eliminates any sort of- because we can't assume that it's going to be a matter of veterans contracting groups if we go into the SBA seeking eligibility again and then it will be instantly reinstated. We expect that there will be time before it will be able- which would put VCG in a position of having to go out and protest yet another procurement in order to fight about its eligibility to compete for STV OSPs because Judge Leto's ruling was the SBA wasn't wrong. And the questions from the court today are why can't VCG just reassert- Even if we said the SBA was wrong under the old standard, they have a new standard. But if it was wrong under the old standard, there's no assumption that VCG was wrong under the new standard. Thank you, counsel. We'll take the case under advisement. All rise.